IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| COPECA, INC.,<br><br>Plaintiff<br><br>v.<br><br>WESTERN AVIATION SERVICES CORP., et al.,<br><br>Defendants | CIVIL NO. 08-2090 (JP) |

**OPINION AND ORDER**

Before the Court is Plaintiff COPECA, Inc.'s ("COPECA") motion for a preliminary injunction (**No. 4**) and Defendants Western Aviation Services Corp. ("WASCO") and Petro Air, Inc.'s ("Petro Air") oppositions thereto (Nos. 16 and 18).[1] Plaintiff COPECA filed the instant lawsuit alleging antitrust violations pursuant to the Sherman Act, 15 U.S.C. §§ 1, 2, and the Clayton Act, 15 U.S.C. §§ 14, 15, 26, as well as Puerto Rico state law. Plaintiff moved for a preliminary injunction to stop the Defendants' alleged tying of the sale of airport ground handling services to the sale of jet fuel. For the reasons stated herein, Plaintiff's motion is hereby **DENIED.**

1. Also before the Court is Plaintiff's supplemental motion in support of its request for preliminary injunction (**No. 32**), and Defendant WASCO's motion to clarify (**No. 33**) and supplemental motion submitting additional evidence (**No. 34**). The Court **NOTES** said motions and considers them in the following analysis.

## I. INTRODUCTION AND BACKGROUND

Plaintiff COPECA is a Puerto Rico corporation with its principal place of business located at the Rafael Hernandez Airport in Aguadilla, Puerto Rico ("Aguadilla Airport"). Defendant WASCO is also a Puerto Rico corporation operating out of the Rafael Hernandez Airport. COPECA and WASCO are the only two licensed Fixed Base Operators ("FBO") at the Aguadilla Airport. An FBO is an airport service center offering multiple services such as aircraft refueling as well as baggage handling and other services. Defendant Petro Air is a petroleum products company that sells products including jet fuel.

Defendant WASCO offers customers ground handling services as well as refueling services. Defendant WASCO purchases the fuel that it sells to customers from Defendant Petro Air. Although Plaintiff COPECA's FBO license permits Plaintiff to provide customers with both ground handling and refueling services, in practice Plaintiff offers refueling but does not conduct ground handling. Providing ground handling services to large passenger and cargo jets requires a significant investment in equipment to provide electric power to aircraft, "push back" tractors, escalators, and baggage and cargo handling. Because Plaintiff COPECA presently does not possess the necessary equipment, it refrains from offering its customers ground handling. Thus, Defendant WASCO is currently the only provider capable of offering ground handling services to large aircraft.

Plaintiff's complaint alleges that its sales of refueling services have been harmed as a result of Defendants' illegal practice of tying the sale of ground handling services to the sale of refueling services. Plaintiff COPECA alleges that Defendant WASCO has told customers that WASCO will only agree to provide them with ground handling services if the customers also decide to purchase refueling services from WASCO. In particular, COPECA alleges that in July 2008, WASCO informed customer Atlas Air that WASCO would not provide ground handling services if Atlas Air purchased its refueling service from a different provider. As a result, Atlas Air was allegedly forced to cancel its existing fuel purchase agreement with COPECA and instead purchase both fuel and ground handling from WASCO. Defendant WASCO denies having engaged in the illegal tying of refueling services to ground handling services. With regard to the alleged incident involving customer Atlas Air, WASCO alleges that the request for services from WASCO was not made directly by Atlas Air, but rather through an intermediary company, World Fuel International, S.R.L. ("World Fuel"). Defendant WASCO alleges that it provides fuel to Atlas Air planes as requested by World Fuel. WASCO further alleges that while World Fuel did request that refueling services be provided by WASCO in July 2008, World Fuel is free to utilize a different refueling service provider, and has indeed done so on other occasions. WASCO alleges that its customers are not coerced into buying refueling and ground handling services as a package deal. In

particular, WASCO notes that several other customers, including FedEx and Spirit Airlines, regularly purchase refueling services from Plaintiff COPECA while utilizing ground handling from Defendant WASCO.

Defendant Petro Air denies participating in a tying arrangement to coerce ground handling customers to purchase refueling services from WASCO or Petro Air. In its opposition to Plaintiff's motion for preliminary injunction, Petro Air argues that because COPECA holds an FBO license, WASCO is not the only company capable of providing ground handling services to large aircraft. Defendant Petro Air also denies that it is an affiliate of WASCO. Petro Air alleges that WASCO purchases fuel from Petro Air, but that beyond this customer-supplier relationship there is no formal association between the two corporate entities.

**II. LEGAL STANDARD FOR A PRELIMINARY INJUNCTION**

The general purpose of injunctive relief is to prevent future acts or omissions of the non movant that constitute violations of the law or harmful conduct. United States v. Oregon Med. Soc., 343 U.S. 326, 333 (1952). The United States Court of Appeals for the First Circuit has set forth a four-part test for trial courts to use when considering whether to grant preliminary injunction requests. Lanier Prof. Serv's, Inc., v. Ricci, 192 F.3d 1 (1st Cir. 1999); Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991). A preliminary injunction is appropriate if: (1) the plaintiff has

exhibited a likelihood of success on the merits; (2) the plaintiff will suffer irreparable injury if the injunction is not granted; (3) such injury outweighs any harm which granting injunctive relief would inflict on the defendant; and (4) the public interest will not be adversely affected by granting the injunction. Narragansett Indian Tribe, 934 F.2d at 5; see, e.g., Aoude v. Mobil Oil Corp., 862 F.2d 890, 892 (1st Cir. 1988); Hypertherm, Inc. v. Precision Products, Inc., 832 F.2d 697, 699 & n.2 (1st Cir. 1987). Whether to issue a preliminary injunction depends on balancing equities where the requisite showing for each of the four factors turns, in part, on the strength of the others. Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 611-13 (1st Cir. 1988). Although a hearing is often held prior to entry of a preliminary injunction, a hearing is not an indispensable requirement. Aoude v. Mobil Oil Corp., 862 F.2d at 893.

## III. ANALYSIS

The Court will now consider Plaintiff's motion for a preliminary injunction in light of the test forth by the First Circuit, *supra*. Narragansett Indian Tribe, 934 F.2d at 5.

### A. Likelihood of Success on the Merits

Plaintiffs must first show that they have a likelihood of succeeding on the merits of their complaint. Narragansett Indian Tribe, 934 F.2d at 5. Plaintiff claims that Defendants have engaged in an illegal tying arrangement under which the sale of ground

handling services by WASCO is conditioned upon the customer's additional purchase of refueling from WASCO and/or Petro Air.

To establish an illegal tying arrangement, a plaintiff must show the following four elements: (1) the tying and the tied products are actually two distinct products; (2) there is an agreement or condition, express or implied, that establishes a tie; (3) the entity accused of tying has sufficient economic power in the market for the tying product to distort consumers' choices with respect to the tied product; and (4) the tie forecloses a substantial amount of commerce in the market for the tied product. Borschow Hosp. and Medical Supplies, Inc. v. César Castillo Inc., 96 F.3d 10, 17 (1st Cir. 1996).

**1. Two Distinct Products**

With regard to the first element of its tying claim, Plaintiff COPECA alleges that ground handling services and refueling services are two distinct products. Defendant WASCO acknowledges that these are two separate products. Defendant Petro Air argues that there are not two distinct products at issue because, by definition, an FBO is a company that provides multiple services to aircraft as part of a single offering.

Two products exist for tying purposes where there is substantial consumer demand for each individual product as sold independently. Data General Corp. v. Grumman Systems Support Corp., 36 F.3d 1147, 1179 (1st Cir. 1994). "[T]he answer to the question

whether one or two products are involved turns not on the functional relation between them, but rather on the character of the demand for the two items." Ramallo Bros. Printing, Inc. v. El Día, Inc., 392 F. Supp. 2d 118, 136 (D.P.R. 2005) (quoting Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 19 (1984)). In the instant case, substantial consumer demand exists for ground handling services and refueling services as sold independently of one another. Customers such as FedEx and Spirit Airlines regularly purchase the two products separately. Defendant Petro Air misconstrues the relevant standard by arguing that because FBOs are licensed to offer multiple services, such services must be considered part of a single product. Although an FBO may be licensed to provide both products, this does not negate the existence of two separate products, each of which individually garners substantial consumer demand. Accordingly, the Court finds that Plaintiffs are likely to succeed in proving that ground handling services and refueling services constitute two distinct products.

**2. Coercion**

The second element of a tying claim requires Plaintiff to demonstrate that Defendant has leveraged its power in the market for the tying product to influence consumer actions with regard to the tied product. Defendant's sale of the tying product must be conditioned upon either the customer's unwilling purchase of the tied product from the defendant, or the customer's unwilling promise not

to purchase the tied product from any other supplier. Data General Corp., 36 F.3d at 1180.

In the instant case, Plaintiff COPECA alleges that Defendant WASCO has conditioned the sale of ground handling services (the tying product) upon customers' unwilling purchase of refueling services (the tied product). Specifically, COPECA refers to an email exchange on July 21, 2008, in which customer Atlas Air, through its director of procurement Shakti Chopra, states:

> I'm informed that Western is the only entity that can perform ground handling services at BQN. Western has informed us that they will refuse to handle our flight if we do not use them for the into plane fueling services. Consequently we are forced to request that Western handle the into plane fueling at BQN.

Prior emails in the same conversation thread indicate that Atlas Air originally intended to use WASCO for ground handling services and COPECA for fueling. However, after learning that "[WASCO] will not allow Copeca to fuel our flight on their ramp," Atlas Air was coerced into purchasing its fueling service from Defendant WASCO.

Defendant WASCO denies coercing ground handling services customers into unwillingly purchasing fueling services. With regard to the alleged Atlas Air incident, WASCO alleges that the request for fuel services was made by an intermediary company, World Fuel, and that said request was made willingly. WASCO alleges that other customers regularly purchase ground handling services from WASCO while using Plaintiff COPECA for fueling services.

The evidence submitted by Plaintiff COPECA strongly suggests that, on at least one occasion, Defendant WASCO coerced customer Atlas Air into purchasing the tied product, fueling services, from WASCO. The Court does not see the relevance of Defendant WASCO's allegation that Atlas Air's procurement requests are made via an intermediary, World Fuel. Even if this is the case, Atlas Air could still be coerced into buying fuel from WASCO, regardless of whether WASCO imposes its condition via communications directly with WASCO or communications to WASCO through intermediary World Fuel.

Although Plaintiff has submitted strong evidence of one instance of conditioning the sale of ground handling upon the sale of fuel, Defendant WASCO alleges that a number of other regular customers, such as FedEx and Spirit Airlines, purchase the two products individually from separate providers. At this stage of the proceedings, it is too early to determine whether Plaintiff will succeed in proving that WASCO engages in a practice of coercion, as required to satisfy the second element of Plaintiff's tying claim. Though more evidence is needed, the Court finds that the emails from Atlas Air indicate a substantial likelihood that Plaintiff may succeed in proving the second element of its tying claim.

**3. Economic Power in Market for Tying Product**

The third element of an antitrust tying claim requires Plaintiff to demonstrate that the entity accused of tying has sufficient economic power in the market for the tying product to distort

consumers' choices with respect to the tied product. Data General Corp., 36 F.3d at 1179. A seller possesses the requisite level of economic power when the seller has the demonstrated ability to force a purchaser to do something that he would not do in a competitive market. Lee v. Life Insurance Company of North America, 23 F.3d 14, 16 (1st Cir. 1994). In addition, sufficient market power may be demonstrated if the seller holds a monopoly in the tying product, controls a very large share of sales in the tying product market, or produces a unique tying product and therefore faces no significant competition from functionally similar products or services. Id.

In the instant case, Defendant WASCO is the only company currently offering ground handling services for large aircraft at the Aguadilla Airport. Thus, WASCO's power in the market for ground handling services is great. Because customers operating large aircraft have no choice but to use WASCO for ground handling services, such customers have little power to bargain or negotiate terms. If WASCO conditions its provision of ground handling services on the concurrent purchase of fueling services, customers are likely to comply with the condition.

Defendants argue that WASCO does not have substantial power in the market for ground handling services because Plaintiff COPECA also possesses an FBO license and therefore is permitted to offer ground handling. This argument misses the mark. COPECA is not currently

equipped to provide large aircraft ground handling. Preparing to do so would require time and expense in obtaining the necessary equipment. Thus, although COPECA is not legally barred from entering the ground handling market, it is as a practical matter not currently a viable competitor in said market. Thus, Defendant WASCO is the only active provider of large aircraft ground handling, and as a result possesses significant power in the market for such services. The Court therefore finds that COPECA has a strong likelihood of succeeding in proving the third element of its tying claim.

**4. Foreclosure of Substantial Amount of Commerce**

The fourth element in a tying claim requires Plaintiff to demonstrate that the tie forecloses a not insubstantial amount of commerce in the market for the tied product. Borschow Hosp., 96 F.3d at 17. In determining whether the amount of commerce foreclosed is not insubstantial, "normally the controlling consideration is simply whether a total amount of business, substantial enough in terms of dollar-volume so as not to be merely de minimis, is foreclosed to competitors by the tie." Fortner Enterprises, Inc. v. U.S. Steel Corp., 394 U.S. 495, 501 (1969). This analysis focuses on the dollar amount of foreclosed commerce, and in most cases does not require an examination into the scope of the market or to the market share foreclosed by the tie. Id.

In the instant case, Plaintiff argues that the amount of commerce affected is substantial because the Aguadilla Airport hosts

several large planes on a daily basis that require large quantities of fuel. Defendants argue that the Aguadilla Airport is a regional airport with a low volume of customers and an insubstantial amount of commerce. Neither Plaintiff nor Defendants provide adequate facts or analysis to permit the Court to assess the fourth element of Plaintiff's tying claim. Both sides focus their arguments on the scope of the market for fueling services to large planes in the Aguadilla Airport. This is not the correct standard for determining whether a not insubstantial amount of commerce is foreclosed. Id. ("[t]he requirement that a 'not insubstantial' amount of commerce be involved makes no reference to the scope of any particular market . . .").

The correct analysis of the fourth element requires determining whether the dollar amount of commerce foreclosed by the tie is more than *de minimis*. Id. The "more than *de minimis*" standard imposes a relatively light burden upon Plaintiff. See, e.g., United States v. Loew's, Inc., 371 U.S. 38, 49 (1962) (holding that $60,800.00 in tied product sales is not insubstantial); Tic X Press v. Omni Promotions Co., 815 F.2d 1407 (11th Cir. 1987) (holding that $10,091.07 exceeds *de minimis* amount). However, in other instances courts have found similar amounts to be insubstantial. See, e.g., M. Leff Radio Parts, Inc. v. Mattel, Inc., 706 F. Supp. 387, 399 (W.D. Pa. 1988) (finding $12,000.00 in tied purchases to be insubstantial); Yentsch v. Texaco, Inc., 630 F.2d 46, 58

(2nd Cir. 1980) ("we are not convinced that [$15,000.00] is sufficient to meet the test of quantitative substantiality").

Here, Plaintiff has provided one example of a lost contract with Atlas Air as a result of the alleged tie. The dollar amount lost by Plaintiff as a result of losing the July 2008 Atlas Air refueling contract is not discussed by the parties. Therefore, more evidence will be needed before a fully informed assessment of the fourth element may be made. At this early stage in the proceedings, the evidence presented does not strongly indicate one way or the other whether Plaintiffs are likely to succeed in demonstrating that a not insubstantial amount of commerce has been foreclosed as a result of the alleged tying arrangement. As such, the Court cannot find that Plaintiff has demonstrated a high likelihood of satisfying the fourth element of the tying claim. Without a likelihood of succeeding on this element, Plaintiff has not demonstrated an overall likelihood of succeeding on the merits of their tying claim. Therefore, the first factor in the preliminary injunction analysis, likelihood of success on the merits, weighs in favor of Defendants.

**B. Irreparable Harm to Plaintiffs**

Plaintiff must next demonstrate that it will suffer irreparable injury if the injunction is not granted. Narragansett Indian Tribe, 934 F.2d at 5. Plaintiff must also demonstrate that there is no adequate remedy at law to compensate it for the harm the company will

suffer. Díaz v. United States Postal Service, 668 F. Supp. 88, 94 (D.P.R. 1987).

Plaintiff COPECA argues that if Defendants' alleged tying arrangement is allowed to continue, COPECA will lose customers who would otherwise have purchased fueling services from COPECA. COPECA further argues that if the alleged tie is not stopped, Defendants' conduct threatens to eliminate competition in the market for fueling services at the Aguadilla Airport. Defendant WASCO argues that Plaintiff's alleged harms are not sufficient to constitute irreparable injury that could not be remedied by a subsequent injunction or damages award after full litigation on the merits.

At present, Plaintiff's allegations discuss a single incident of tying involving customer Atlas Air. Said incident is well supported by documentary evidence and deposition testimony. Defendants allege that by contrast with the coercion allegedly experienced by Atlas Air, several other major customers regularly purchase ground handling service from WASCO while purchasing fueling service separately from COPECA. WASCO has supported its allegations with records of recent ground handling only sales to customers such FedEx and Spirit Airlines.

Based on the allegations and evidence presented, the Court finds that Plaintiff's allegations do not indicate a threat of irreparable harm. It appears that Plaintiff's business is not at risk of being eliminated, as a number of major customers continue to purchase

fueling services from Plaintiff. To the extent that a single Atlas Air contract was lost as a result of Defendants' actions, Plaintiff may be compensated with a damages award. Even if Atlas Air continues to utilize the Aguadilla Airport and unwillingly purchase fueling service from WASCO during the pendency of the instant lawsuit, Plaintiff could be awarded the value of those ongoing lost contracts if it prevails at trial. In addition, following the cessation of the tying arrangement, Atlas Air would be free to reassess its purchasing patterns and return to using COPECA for fueling service if COPECA offers desirable pricing and quality service. For these reasons, the second factor in the preliminary injunction analysis, irreparable harm, weighs in favor of Defendants.

**C. Balance of Interests**

Plaintiff must next demonstrate that the injury it would suffer in the absence of an injunction outweighs any harm which granting injunctive relief would inflict on the defendant. Narragansett Indian Tribe, 934 F.2d at 5. Plaintiff argues that Defendants would not suffer any harm if an injunction is issued because the injunction would merely require Defendants to terminate their illegal tying arrangement and comply with the law.

Defendants argue that the issuance of an injunction would impose a great burden on them due to the negative effect on Defendants' business reputation. Defendant WASCO contends that issuance of an injunction could result in the Puerto Rico Port Authority's

suspension of WASCO's FBO license. WASCO further argues that an injunction would have a chilling effect on customers' decisions to utilize the services of a company found to have apparently violated antitrust laws.

In light of the strong evidence of at least one instance of conditioning Atlas Air's purchase of ground handling service upon the concurrent purchase of fueling service, the Court is not particularly sympathetic to Defendant WASCO's argument that its business reputation would suffer as a result of the issuance of a preliminary injunction. However, in balancing this burden against the relatively small potential burden upon Plaintiff in the absence of an injunction, the Court finds that the balance of impositions tilts slightly toward denial of the request for a preliminary injunction. If Plaintiff's claim proves meritorious, Plaintiff can be readily made whole by a damages award, and in the meantime, Plaintiff continues to enjoy the business of several regular customers who purchase the two products separately. By contrast, if Defendants prevail after being subjected to an injunction, there is a risk of more severe consequences, such as a lost FBO license during the period that the injunction is in force. Therefore, the third factor in the preliminary injunction analysis, the balance of the potential impositions on the respective parties, weighs slightly in favor of Defendants.

**D. Public Interest**

Finally, Plaintiff must demonstrate that the public interest will not be adversely affected by granting the injunction. Narragansett Indian Tribe, 934 F.2d at 5. COPECA argues that the public interest will suffer if injunctive relief is withheld because Defendants' coercive tying arrangement forecloses competition and prevents airlines from choosing among a wider range of potential suppliers of fueling service at the Aguadilla Airport. Plaintiff argues that this effect will lead to airlines, and in turn their passengers, paying higher prices and losing the bargaining power to demand reliable high quality service. Plaintiff notes that these effects could burden a number of airlines that regularly utilize the Aguadilla Airport, including Continental, JetBlue, Spirit Airlines, DHL, and FedEx.

Defendants argue that customer choice has not been foreclosed, as evidenced by the regular purchases of COPECA fueling service by at least two of the five airlines mentioned by Plaintiff. Therefore, while the negative effects described by Plaintiff could occur if customer choice were curtailed by a tying arrangement, in fact customers can and do freely choose COPECA for fueling their planes.

Because Plaintiff has alleged only one specific instance of a customer being coerced into purchasing fuel service from WASCO, it appears at this stage of the proceedings that any anticompetitive effects of Defendants' actions have been minor. Regular customers

at the Aguadilla Airport continue to have access to more than one provider of fueling services, and those customers therefore enjoy the bargaining power that results from a competitive market. The individuals purchasing passenger air travel or sending shipments with those airlines are also not suffering from higher costs or lower quality service associated with reduced competition.

Nevertheless, if Atlas Air and in turn its customers are being forced into purchasing fueling service from WASCO, then the alleged tying arrangement continues to cause some harm to third parties. The effect on the public interest that would result from granting the requested injunction would likely be positive in that all customers would be guaranteed free choice of providers for fueling service. Comparing the potential effects with the injunction and without the injunction, the Court finds that the public interest would most likely benefit from granting the injunction. However, this benefit would be small given that at present it appears the only third party that has been affected by the alleged tie is Atlas Air. Therefore, the Court finds that the fourth factor in the preliminary injunction analysis, public interest, weighs slightly in favor of Plaintiff.

Considering all four of the aforesaid factors as required by Narragansett Indian Tribe, *supra*, with the greatest weight given to Plaintiff's likelihood of success on the merits, the Court finds that injunctive relief is not warranted. See Weaver v. Henderson,

984 F.2d 11, 12 (1st Cir. 1993) (labeling likelihood of success on the merits as the critical factor).

## IV. CONCLUSION

In conclusion, the Court **DENIES** Plaintiffs' motion for a preliminary injunction.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 25th day of August, 2009.

s/Jaime Pieras, Jr.
JAIME PIERAS, JR.
U.S. SENIOR DISTRICT JUDGE